## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR33 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| RANDY L. JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion of defendant Randy L. Johnson (Johnson) to suppress (Filing No. 18).  Johnson seeks to suppress any evidence seized from Johnson as a result of Johnson's arrest on August 26, 2004, including any statements Johnson may have provided to law enforcement officers.  Johnson is charged in Count I of the Indictment with the possession of a firearms and ammunition after Johnson had been convicted of a felony in violation of 18 U.S.C. § 922(g).

Evidentiary hearings were held on the motion on April 13 and 28, 2005.  At the hearings, the court heard testimony from Officers Brian Kulhanek (Officer Kulhanek), Tracey Scherer (Officer Scherer), and Steven J. Henthorn (Officer Henthorn) of the Omaha Police Department (OPD).  The court also received into evidence a portion of the Omaha Municipal Code (Exhibit 1), a videotape of an OPD interview of Johnson (Exhibit 2), four photographs of a house on Spencer Street (Exhibit 101), and a photograph of a firearm (Exhibit 102). Johnson submitted a brief in support of his motion (Filing No. 19).  The government did not submit a brief in opposition.  A transcript of the hearing (TR.) was prepared and filed on May 12, 2005 (Filing No. 30).  There was no post-hearing briefing.

### FINDINGS OF FACT

On August 26, 2004, Officer Kulhanek was assigned to the Northeast Precinct of the OPD and was working the B shift as a uniformed patrol officer in a marked cruiser (TR. 11). While on patrol, Officer Kulhanek received a radio call in his cruiser from OPD dispatch that

a person had called in and reported a black male wearing a sports jersey bearing the number "16" had a handgun in the back of his pants and was located near the area of 41st and Spencer Streets in Omaha (TR. 14; 23; 43).  When such a dispatch call is received, most available officers in the area respond to the location to provide support in a dangerous situation (TR. 14).  Upon Officer Kulhanek's arrival in the area, a couple of other uniformed officers were already at the scene (TR. 14).  Officer Scherer observed approximately six black males at the corner of 41st and Spencer Streets (TR. 45).  As soon as the officers arrived, Officer Scherer observed the group separating and walking in separate directions, mostly northbound (TR. 45).  Officer Scherer observed one of the individuals from a group of three being stopped by Officer Murphy (TR. 46).  Officer Murphy stopped defendant Johnson who was wearing a sports jersey bearing the number "16" (TR. 46).  After Officer Scherer identified the two individuals she had stopped and had run data checks on them, Officer Scherer walked to the corner of 41st and Spencer where she first saw the group in order to search the area for a handgun (TR. 47-48).   Underneath a bush on the corner of 41st and Spencer, Officer Scherer found a grocery sack (TR. 48).  Officer Scherer opened the bag and observed a handgun, which she believed to be a IntraTec 9 (TR. 48).  Officer Scherer informed the other officers of her find and ensured that no one would touch it until the crime lab arrived (TR. 48).

All of the individuals who were in the original cluster of individuals at 41st and Spencer were stopped and searched (TR. 49).  No firearms were found (TR. 49).  At the time, there was an OPD "locate" issued for Johnson (TR. 58; 66).  A "locate" is an OPD broadcast for a named person as a device whereby OPD officers are informed that a unit in OPD wants to talk to a certain person (TR. 66).  The "locate" was issued by the homicide unit and included Johnson's name, date of birth, and other identifying information (TR. 66).  The homicide unit had issued the "locate" for Johnson as Johnson had made a previous statement to a police officer about some knowledge Johnson may have in a homicide the OPD was investigating (TR. 67).  Officer Murphy had turned Johnson over to Officer Kulhanek while Officer Murphy went to a nearby residence to talk with an individual (TR. 50).  Shortly, Officer Murphy came running out with a child and person behind her stating that someone was hiding in the residence (TR. 50).  Concerned that there was a person with a gun barricaded in the

2

residence, the police officers refocused their attention on the residence and securing the individual hiding in the residence (TR. 49). At this time the IntraTec 9 had not been run on any data base as the crime lab had not yet arrived (TR. 51). It would take another forty-five minutes for the area to be secure (TR. 50). In the meantime, Johnson had been transported, in handcuffs, to Central Station by Officer Kulhanek (TR. 50). Apparently, Johnson had been arrested because a gun was found at the scene (TR. 31). When the IntraTec 9 was checked against databases, the gun was determined to be unregistered but not reported stolen (TR. 51).

Johnson was brought in handcuffs to an interview room at OPD Central Station (Exhibit 2; TR. 70). There he was seated in a chair at a table in the interview room (Exhibit 2). Officer Henthorn entered the room with an OPD officer who removed Johnson's handcuffs at Officer Henthorn's request (Exhibit 2). The OPD officer left the room and Officer Henthorn then advised Johnson the reasons Johnson was brought to OPD Central Station was the "locate" regarding information Johnson may have on a homicide and the fact that a gun was found near where Johnson was detained that day at 41st and Spencer (Exhibit 2). Officer Henthorn advised Johnson of Johnson's *Miranda* rights, Johnson stated that he understood them, and agreed to talk with Officer Henthorn (Exhibit 2). The interview lasted approximately two hours (Exhibit 2; TR. 71)). There were several breaks in the interview (Exhibit 2; TR. 71). At one break, an OPD officer entered and took buccal swabs from Johnson for the purpose of DNA analysis (Exhibit 2). Initially and persistently, Johnson denied having knowledge or possession of the gun found under the bush at 41st and Spencer (Exhibit 2; TR. 73). However, Johnson changed his version of the events toward the end of the interview and admitted to possessing the gun after Officer Henthorn informed Johnson that Johnson's fingerprint was found on the gun (Exhibit 2: TR. 73). Officer Henthorn admitted his statement to Johnson that Johnson's fingerprint was found on the gun was not true (TR. 74). Officer Henthorn stated this was a ploy to get Johnson to admit Johnson's possession of the gun (TR. 74). Other than this ruse, Officer Henthorn did not promise or coerce Johnson to make an admission of possession of the gun (Exhibit 2). At the time of the interview, Officer Henthorn did not know the case would be referred to the federal authorities for prosecution and believed

3

Johnson was under arrest for a violation of the Omaha Municipal Ordnance for a misdemeanor violation of possessing an unregistered firearm (TR. 79). Officer Henthorn was unaware at the time of the interview that Johnson's possession of the firearm would constitute anything other than the misdemeanor violation for which he was arrested (TR. 79-80).

## LEGAL ANALYSIS

Johnson asserts his arrest was illegal and that Johnson's statement to Officer Henthorn was the product of Johnson's illegal arrest. The government asserts the arrest was proper as there was probable cause for Johnson's arrest. The government further asserts that if there was anything improper about Johnson's arrest, any taint was sufficiently purged to warrant the admission of Johnson's statement into evidence as a voluntary statement.

In this case, the police were aware that an anonymous caller reported a black male wearing a sports jersey with the number "16" had a gun in the back of his pants and was located near 41st and Spencer Streets. The only connection between Johnson and the report was that Johnson was seen in the area of 41st and Spencer Streets, was a black male wearing a sports jersey with the number "16", and attempted walk away from the area when police officers arrived. The gun which was found in the area was not found on any one of the individuals including Johnson, but was found in a grocery bag under a bush in the general area where the black males were standing. After Johnson was taken downtown to Central Police Station, the gun was run through data bases and found not to be stolen nor registered to anyone, including Johnson. The evidence presented by the government did not establish which officer, if any, arrested Johnson at the scene. Nor did the evidence set forth what the arresting officer knew at the time of Johnson's forced removal from the area of 41st and Spencer Streets. What is clear is that there was a "locate" for Johnson, that Johnson was wearing the sport jersey with the number "16," and that Johnson was in the vicinity where a gun was found in a grocery bag under a bush. It is also clear that Johnson was later booked and charged with possessing an unregistered firearm, a misdemeanor.

In *Florida v. J.L.*, 529 U.S. 266 (2000), the Supreme Court held that an anonymous tip that a person is carrying a gun was insufficient to justify a police stop and frisk of that person

4

under the reasonable suspicion standard of **Terry v. Ohio**, 392 U.S. 1 (1968).  In **Florida v. J.L.**, an anonymous caller reported to the police that a young black male wearing a plaid shirt was standing at a particular bus stop and was carrying a gun.  The record did not reflect anything more than there was an anonymous caller.  When the police arrived at the location approximately six minutes later, they saw three black males loitering there.  The defendant, J.L., was wearing a plaid shirt.  The police had nothing else to suspect any of the black males with any illegal conduct.  The anonymous caller provided no predictive information and left the police with nothing to test the reliability of the anonymous caller.  The Court held that the reasonable suspicion required to stop and search J.L. be reliable in the assertion of illegality, not just in its tendency to identify a determinate person.  Johnson argues that if the police in **J.L.** did not have reasonable suspicion to perform a **Terry** stop, then the OPD surely did not have probable cause to arrest Johnson on the basis of the information from an anonymous caller that a black male was loitering in the vicinity of 41st and Spencer and that he was wearing a sports jersey with the number "16."

In this case, the OPD officers did precisely what the officers did in **J.L.** on the basis of the same information from an anonymous caller.  However, unlike in **J.L.**, nothing was found on any of the black males stopped by the OPD in this case.  What was found, however, was a firearm in a grocery bag discarded under a bush at the location where the six black males were standing prior to the arrival of the OPD officers.  The finding of the firearm was legitimate.  No illegal search was conducted to discover it since the firearm was discarded on the ground.  It is the connection of that firearm to Johnson which is the issue in this matter.  It appears the basis for Johnson's arrest was that he was in the general area of where the firearm was found and that he was wearing a sports jersey with the number "16," as stated by the anonymous caller.  If the firearm was found in the back of Johnson's pants as stated by the anonymous caller, there would have been probable cause for Johnson's arrest, albeit subject to suppression because such discovery would have been illegally obtained under the rationale of **Florida v. J.L.**  However, the firearm was found under a bush in a "grocery sack", not in the "back of the pants" of Johnson, the person wearing the sports jersey with the number "16."  Accordingly, the OPD's reliance upon the information of the anonymous caller to arrest

Johnson was further dissipated.  To justify the arrest of Johnson, it must be found that probable cause existed when Johnson, while wearing the sports jersey with the number "16," was in the vicinity along with five other persons where the firearm was located.  Such does not constitute probable cause for Johnson's arrest when he was placed in handcuffs.  **See *United States v. Tovar-Valdivia***, 193 F.3d 1025, 1027-28 (8th Cir. 1999).  The court finds the OPD arrested Johnson on the sketchy information of the anonymous caller and further wanted to talk with Johnson "downtown" on the basis of the "locate" request by the OPD homicide unit.  Neither basis, by itself or in combination, warranted the arrest of Johnson.  His arrest on August 26, 2004, was improper and unlawful.

Johnson asserts that his admissions to Officer Henthorn at OPD Central Headquarters following his arrest should be suppressed.  ***Kaupp v. Texas***, 538 U.S. 626 (2003).  Ordinarily, a confession obtained as a result of an illegal arrest cannot be used against a criminal defendant.  ***Brown v. Illinois***, 422 U.S. 590, 603 (1975).  However, where a confession is an act of free will sufficient to purge the primary taint of illegality, the confession may be admissible.  ***Wong Sun v. United States***, 371 U.S. 471 (1963).  The burden of persuasion to demonstrate such purgation lies with the government.  **See *Brown*** 422 U.S. at 604.  In this case, Johnson was given advice of his rights under ***Miranda v. Arizona***, 384 U.S. 436 (1966).  But such warnings, "*alone* and *per se*, cannot always . . . break, for Fourth Amendment purposes, the casual connection between the illegality and the confession." ***Brown***, 422 U.S. at 603 (emphasis in original).  In this case, Johnson was interrogated for several hours in a small interrogation room at OPD Central Headquarters.  Johnson persistently denied any possession of the firearm found at 41st and Spencer.  Johnson was subjected to buccal swabs and overblown and exaggerated claims of DNA connections.  Only after Officer Henthorn lied to Johnson about Johnson's fingerprints being found of the firearm, did Johnson confess to possessing the firearm.  This melange of interrogation tactics does little but convince the court that Johnson's will was overborne during the interrogation and that the government has utterly failed to overcome the primary taint of Johnson's unlawful arrest.

The court finds that Johnson's statement should be suppressed from evidence in this case, and his motion to suppress (Filing No. 18) should be granted.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Johnson's motion to suppress (Filing No. 18) be granted.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to timely appeal or object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 23rd day of June, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge